c

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| TANISHA WHITE, Plaintiff | CIVIL ACTION NO. 1:19-CV-01410 |
| VERSUS | JUDGE DRELL |
| CITY OF WINNFIELD, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Rule 12(b)(6) Motion to Dismiss (ECF No. 18), filed by Defendants the City of Winnfield (the "City"), Chief Johnny Ray Carpenter ("Chief Carpenter"), and Lieutenant Charles "Chuck" Curry ("Lt. Curry") (collectively, "Defendants").[1]  Defendants seek dismissal with prejudice of Plaintiff Tanisha White's ("White's) suit for failure to state a claim and as untimely.  ECF No. 18 at 1. White opposes. ECF No. 21.  However, White requests a briefing schedule for limited discovery on qualified immunity, and she consents to dismiss Chief Carpenter in his official capacity only and her abuse of process claim.  ECF No. 21 at 10.

White's official capacity claim against Chief Carpenter is duplicative of her federal constitutional claims against the City. But there is no *respondeat superior*

---

[1] White's claims against Officer Justin Curry ("Officer Curry") are not currently before the Court. Originally, the Court dismissed Chief Carpenter, Lt. Curry, Officer Curry, John Doe, and XYZ Insurance Company under Local Rule 41.3 for failure to serve the summons and complaint within 90 days of filing suit.  ECF Nos. 7, 8. On May 13, 2020, the undersigned reinstated Defendants Chief Carpenter, Lt. Curry, Officer Curry, and XYZ Insurance Company.  ECF Nos. 11, 12.  The record shows Officer Curry has not been served to date. Thus, the undersigned recommends White be ordered under LR 41.3 to show good cause why service of summons and complaint has not been made as to Officer Curry.

liability under § 1983 against a municipality.  And White fails to state plausible state law tort claims against Defendants and concedes to dismissal of her abuse of process state tort claim.

White also fails to state a plausible state law claim against Chief Carpenter and Lt. Curry under *respondeat superior.*  And she fails to state a plausible state law claim against Lt. Curry for negligent hiring, training, and/or supervisions. However, Defendants do not seek dismissal of White's *Monell* claims against the City.  Also, the Complaint (ECF No. 2) states sufficient factual allegations to overcome the defense of qualified immunity at this stage of the proceedings as to White's § 1983 claims against Chief Carpenter and Lt. Curry in their individual capacities For these reasons, Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 18) should be GRANTED IN PART AND DENIED IN PART.

## I.    <u>Background</u>

White filed a Complaint[2] (ECF No. 2), asserting civil rights violations under 42 U.S.C. § 1983 and state law tort claims.  White named as Defendants the City, Officer Curry in his individual capacity, Lt. Curry in his individual capacity, Chief Carpenter in both his individual and official capacities, John Doe, and XYZ Insurance Company.  ECF No. 2 at 1-2.  Officer Curry, Lt. Curry, and Chief Carpenter are employees of the Winnfield Police Department ("WPD").  *Id.* White alleges that the

---

[2] White filed a redlined draft copy of a Complaint (ECF No. 1) on October 30, 2019.  ECF No. 1. That Complaint (ECF No. 1) was similar, but not identical to, the later filed Complaint (ECF No. 2). Thus, as discussed herein, White's second-filed Complaint (ECF No. 2) will be considered an Amended Complaint.

City, WPD, and their named employees acted under the color of state law.  ECF No. 2 at 2.

On November 5, 2018, WPD was called to 508 North Pineville Street in Winnfield, Louisiana.  *Id.* at 3.  Officer Curry encountered White when responding to the residence while acting in the course and scope of his employment with WPD.  *Id.*

White alleges a Louisiana State Investigative Report shows Officer Curry fired his WPD issued JPX Pepper Spray Gun (the "pepper spray gun") at her while standing within five feet of her.  *Id.*  She contends she was unarmed, was not committing a crime when she was shot, and was not charged with any offense from the incident.  *Id.* at 5.  The spray struck inside and underneath her right eye. *Id.* at 3.

White alleges Officer Curry called his father, Lt. Curry, to the scene rather than an ambulance, delaying her medical care. *Id.* at 4.  White alleges Lt. Curry and Officer Curry showed indifference to her health and well-being, placed her in the back seat of a WPD police vehicle, and drove her to the hospital.  *Id.*  She contends Lt. Curry's and Officer Curry's actions or inactions unnecessarily delayed or prevented her from receiving necessary and immediate medical attention.

The pepper spray gun shoots pepper spray at approximately 405 miles per hour.  *Id.* at 5.  According to manufacturer's warnings, the pepper spray gun is not to be fired at a subject within a five-foot range, and that doing so will result in serious injury or death.  *Id.*

White alleges Officer Curry, Lt. Curry, and Chief Carpenter knew or should have known that shooting the pepper spray gun within close range would result in serious injury or death. *Id.* She asserts Officer Curry's actions were reckless and intentional. *Id.* According to White, due to the actions or inactions of the WPD Officers, she permanently lost vision in her right eye. *Id.* at 6.

The City utilizes and employs its own police department, the WPD. *Id.* Chief Carpenter was the responsible decisionmaker and policymaker for WPD. *Id.* White avers that Chief Carpenter, in his official capacity, was and is responsible for adopting, implementing, promulgating, and enforcing policies, customs, and practices pertaining to arrest and preserving the peace. *Id.* He is responsible for screening, hiring, disciplining, training, supervising, and retraining WPD officers, including proper training to make arrests, preserve the peace, and exert constitutional use of force. *Id.* at 7.

White contends Chief Carpenter, Lt. Curry, and the City were, or should have been, aware of prior non-lethal incidents involving the use of force. *Id.* She avers Chief Carpenter, Lt. Curry, and the City failed to properly examine and scrutinize the background of Officer Curry which included a history of "unnecessary use of force" from a grievance during his employment with WCC. *Id.* White asserts Chief Carpenter, Lt. Curry, and the City failed to train, supervise, or discipline Officer Curry – a part-time officer – regarding proper police practices, including use of force and weapons training. *Id.* White contends there was no use of force policy in place

4

for the City.  *Id.* at 8.  She further asserts Officer Curry received preferential treatment cause his father was a lieutenant with WPD.  *Id.*

White alleges § 1983 claims against Officer Curry, Chief Carpenter, and Lt. Curry for violations of the Fourth Amendment for unreasonable search and seizure and use of unreasonable and excessive force.  *Id.* at 10. She also asserts § 1983 claims against Lt. Curry and Chief Carpenter for violations of the Fourth and Fourteenth Amendments resulting from their failure to train, supervise, and discipline Officer Curry, and from the creation or failure to correct unconstitutional policies, practices, patterns, or customs.  *Id.* at 11.

White asserts § 1983 claims against the City for violations of the Fourth and Fourteenth Amendments for deliberate indifference to alleged policies, patterns, practices, and customs, and to the need for more or different training, supervision, investigation, or discipline in numerous alleged areas.  *Id.* at 12.

She also alleges state law tort claims against Defendants under Louisiana Civil Code Articles 2315 and 2317. *Id.* at 13-14. White asserts all Defendants' actions or inactions constitute the torts of aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.  *Id.* at 14.  White also asserts Lt. Curry's, Chief Carpenter's, and the City's actions or inactions constitute torts of negligent hiring, negligent retention, and negligent supervision. *Id.* at 15.

5

She avers Defendants are jointly, severally, and solidarily liable. *Id.* at 16. White seeks compensatory damages, punitive damages as to Officer Curry, Chief Carpenter, and Lt. Curry, and reasonable attorneys' fees and costs. *Id.*

Defendants now seek a Rule 12(b)(6) dismissal with prejudice of White's suit for failure to state a claim and as untimely.[3]  ECF No. 18.  White opposes. ECF No. 21.  White consents to dismissal of her § 1983 official capacity claim against Chief Carpenter and her abuse of process state tort claim.  ECF No. 21 at 3.

## II. <u>Law and Analysis</u>

### A. <u>White's allegations must raise a plausible right to relief.</u>

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[4]  But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d 207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted).  Factual allegations need not be detailed but must "raise a right

---

[3] A review of the record shows no service or waiver of service on behalf of Officer Curry. Defendants do not seek relief on behalf of Officer Curry.

[4] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted)).

**B.**   **White's action is timely.**

Defendants assert White's suit should be dismissed as untimely. ECF No. 18-2 at 8. Defendants assert - and it is undisputed — that Louisiana's one-year prescriptive statute for delictual actions applies to the statute of limitations for § 1983 actions. *Id.* (citing *Campos v. City of Natchitoches*, 795 Fed.Appx. 933, 935 (5th Cir. 2020) (unpublished)). Defendants further assert White's state law causes of action for battery, assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process are subject to a one-year prescriptive period. *Id.* (citing La. Civ. Code art. 3492).

Defendants argue White's claims are prescribed on the face of the Complaint. *Id.* at 8. White alleges the actions giving rise to her Complaint (ECF No. 2) occurred on November 5, 2018. ECF No. 2 at 3. Defendants contend White filed her Complaint (ECF No. 2) on November 6, 2019, over one year from the time of the alleged delictual action. ECF No. 18-2 at 8.

Counsel for White, Mr. Christopher J. Murell ("Mr. Murell"), responds that the Original Complaint and Coversheet were filed on October 30, 2019 – less than a year from November 5, 2018. ECF No. 21 at 9 (citing ECF No. 1). Mr. Murell represents that he was notified by the clerk's office on November 6, 2019 that the pleading filed showed "redlines" from editing. *Id.* Mr. Murell asserts the clerk asked him to submit a clean version without redlines, which was done that day. *Id.* (citing ECF No. 2). The second Complaint filed was "not a new filing, but the identical complaint without redlining." *Id.* He further argues the original pleading was never withdrawn and the docket report states the document was "filed in error, wrong pdf attached." *Id.* (citing ECF No. 1). He contends the filing is literally identical. However, he contends the November 6, 2019 filing at worst would be considered an amended petition, which is allowed as a matter of course within fifteen days of service. *Id.* at 9-10.

It is undisputed that White's claims relate to an alleged incident on November 5, 2018. ECF No. 2 at 3, ECF No. 21 at 1. To timely file, White had to file suit by November 5, 2019. The record shows that on October 30, 2019, White's counsel erroneously filed a draft copy of a Complaint (ECF No. 1) – a "redlined" draft different than the subsequently filed "correct" Complaint (ECF No. 2). The late filed copy contained some but not all the same defendants and allegations. *See* ECF Nos. 1, 2. On November 6, 2019, one day after the one-year prescription date, White's counsel filed a "corrected" copy of the Complaint (ECF No. 2).

Except for elaborating on the original allegations and removing a manufacturer defendant and related allegations in the original filing, the corrected

Complaint contained no new causes of action against the original defendants and no new parties. ECF Nos. 1, 2. White's corrected Complaint (ECF No. 2) is more accurately viewed as an Amended Complaint, the original Complaint (ECF No. 1) having timely been filed. Though not by a clean copy, the record clearly shows White timely filed suit against Defendants before November 5, 2019.[5]

### C.    42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). Municipalities are "persons" within the meaning of § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A plaintiff in a civil rights suit must show that the conduct complained of was committed by a person acting under color of state law. *Lugar v. Edmondson Oil Co., Inc.*, 475 U.S. 922, 937 (1982).

Under *Monell*, municipalities can be held liable for constitutional violations which arise from enforcement of the municipality's policies or procedures. *Monell*, 436 U.S. 658. Municipalities cannot, however, be liable under Section 1983 for the

---

[5] Because there is no federal statute of limitations for actions brought pursuant to § 1983, federal courts borrow the forum state's general personal injury limitations period. *Wallace v. Kato*, 549 U.S. 384, 387, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007); *Owens v. Okure*, 488 U.S. 235, 249–50, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). The forum state's applicable tolling provisions are also given full effect. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 421 (5th Cir. 2016) (internal quotation marks and citation omitted). Louisiana's one-year liberative prescription period thus applies to White's § 1983 action. *See id.*; La. Civ. Code Ann. art. 3492.

constitutional torts of their employees under the doctrine of *respondeat superior*. *Id.* at 691. Thus, a "<u>Monell</u> claim" is a claim against a municipality for a constitutional deprivation which is tied directly to a policy or custom of the municipality.

### D. White's § 1983 claims against Chief Carpenter in his official capacity should be dismissed with prejudice.

Defendants seek dismissal of White's § 1983 claims against Chief Carpenter in his official capacity. ECF No. 18-2 at 2. Defendants argues that any official capacity claims against Chief Carpenter are more properly asserted against the City. *Id.*[6]

White has no objection to dismissing federal claims against Chief Carpenter in his official capacity. But she requests Defendants stipulate *respondeat superior* liability for any state law tort claims against Lt. Curry, Officer Curry, and Chief Carpenter. ECF No. 21 at 3.[7] Nevertheless, White agrees to dismissal of her federal claims against Chief Carpenter in his official capacity. ECF No. 21 at 10.

A suit brought against a defendant in his official capacity is effectively a suit against the governmental unit that employs the defendant – here, the City. *Monell*, 436 U.S. at 690 n.55; *Brooks v. George County, Miss.*, 84 F.3d 157, 165 (5th Cir. 1996). Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. It is

---

[6] While Defendants' prayer for relief includes dismissal of the City, the briefing does not address White's claims against the City itself. Thus, to the extent Defendants' motion may be construed to seek dismissal of White's *Monell* claims against the City, Defendants' Motion (ECF No. 18) should be DENIED IN PART.

[7] Defendants oppose any stipulation to liability via *respondeat superior* for White's state law claims arising from alleged actions or inactions of Chief Carpenter, Lt. Curry, or Officer Curry. ECF No. 22 at 1.

also firmly established that a municipality cannot be held liable for the unconstitutional acts of its non-policy making employees under the theory of *respondeat superior*. *Id.* at 691. Therefore, it is appropriate to dismiss allegations against officers in their official capacities where those allegations duplicate claims against the respective governmental entity. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001).

Here, because White sued the City directly, White's § 1983 official capacity claims against Chief Carpenter are redundant and should be dismissed.

### E.    White states plausible § 1983 claims against Chief Carpenter and Lt. Curry in their individual capacities.

Chief Carpenter and Lt. Curry raise the defense of qualified immunity as to White's § 1983 claims against them in their individual capacities. ECF No. 18-2 at 2-3. Yet, Defendants acknowledge that the Complaint (ECF No. 2) advances sufficient factual allegations to overcome their qualified immunity defense at this stage. *Id.* at 3. Thus, Defendants seek to stay all proceedings and allow limited discovery on the issue of qualified immunity. *Id.* (citing *Smith v. City of Baton Rouge*, 2018 WL 2208427, at *3-4 (M.D. La. 5/14/18)). Defendants ask the Court to defer ruling on the motion to dismiss based on qualified immunity, pending limited discovery. *Id.* at 4.

Defendants further assert White's Complaint (ECF No. 2) fails to state a plausible § 1983 individual capacity claim against Chief Carpenter. ECF No. 18-2 at 4. Defendants argue White's Complaint is devoid of any allegations of Chief Carpenter's personal involvement in the alleged incident between White and Officer Curry. *Id.*

White asserts she does not need to allege Chief Carpenter's personal involvement for her individual capacity claims to survive a Rule 12(b)(6) dismissal. ECF No. 21 at 3. White argues that the allegations, accepted as true, are sufficient to establish that Chief Carpenter was in charge of establishing, implementing, and enforcing policies, that he is responsible for hiring, supervising, disciplining, training, and supervising his officers, and that he hired and armed Officer Curry despite his history of excessive use of force claims. *Id.* at 3. White asserts Chief Carpenter failed to ensure Officer Curry was properly trained as to use of force, or how to respond when use of force caused bodily injury. *Id.* at 4. Citing supervisory liability for failure to supervise or train,[8] White argues the facts alleged are sufficient to state a claim for relief against Chief Carpenter in his individual capacity. *Id.* at 3-4.[9]

In the context of a motion to dismiss, "a district court must first find that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity." *Backe v. Leblanc*, 691 F.3d 645, 648 (5th Cir. 2012). "The qualified immunity defense has two prongs: whether an official's conduct violated a constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) (citing *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009)). Even if a defendant's actions violated a clearly established constitutional right, a court must determine whether

---

[8] *See* ECF No. 21 at 4 (citing *Davidson v. City of Stafford, Texas.*, 848 F.3d 384, 397 (5th Cir. 2017) *as revised* (Mar. 31, 2017)).

[9] White mistakenly appears to reference "official capacity" in this portion of the briefing. ECF No. 21 at 3. But it is apparent her argument is directed to the § 1983 claims against Chief Carpenter in his individual capacity, specifically supervisory liability.

qualified immunity "is still appropriate because the defendant's actions were objectively reasonable in light of law which was clearly established at the time of the disputed action." *Id.* (internal quotations omitted) (citing *Collins v. Ainsworth*, 382 F.3d 529, 537 (5th Cir. 2004)).

"To be clearly established for purposes of qualified immunity, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)). "In essence, a plaintiff must allege facts sufficient to demonstrate that no reasonable [official] could have believed his actions were proper." *Id.* (citing *Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994)). "Whether an official's conduct was objectively reasonable is a question of law for the court, not a matter of fact for the jury." *Id.* (citing *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

As to the individual claims, in a Section 1983 action, a supervisory official may be held liable only if: (a) he affirmatively participated in the acts that resulted in a constitutional deprivation; or (b) he implemented unconstitutional policies that resulted in the plaintiff's injury. *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). To establish supervisor liability for constitutional violations committed by subordinate employees, the plaintiff must show that the supervisor acted, or failed to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates. *Id.*

"For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference. Deliberate indifference requires a showing of more than negligence or even gross negligence. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity. To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation." *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381-83 (5th Cir. 2005).

"To prevail on a 'failure to train theory' a plaintiff must demonstrate: (1) that the training procedures were inadequate, (2) that defendant was deliberately indifferent in adopting the training policy, and (3) the inadequate training policy directly caused the violations in question." *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017) (citing *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5th Cir. 2010), cert. den., 564 U.S. 1038 (2011)). "In order for liability to attach based on an inadequate training claim, a plaintiff must allege with specificity how a particular training program is defective." *Trammell*, 868 F.3d at 345 (quoting *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005)); *see also Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018). A failure to supervise claim is evaluated in the same way as a failure to train claim. *See Trammell*, 868 F.3d at 344 (citing *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003)).

Here, White alleges Chief Carpenter and Lt. Curry knew or should have known that shooting a pepper spray gun directly at a person's face within five feet would

14

result in serious injury. ECF No. 2 at 5. White avers Chief Carpenter is the responsible decisionmaker and policymaker for WPD. *Id.* at 6. He is responsible for the screening, hiring, disciplining, training, supervising, and the retraining of WPD officers to ensure they are qualified and properly trained to perform their duties and functions, including making arrests, preserving the peace, and the constitutional use of force. *Id.* at 7.

White alleges Chief Carpenter and Lt. Curry were aware, or should have been aware, of prior use of force incidents involving non-lethal mechanisms, as the WPD previously has been under fire for a tasing incident that caused the death of a Winnfield citizen. *Id.* at 7. White asserts Chief Carpenter and Lt. Curry did not properly examine and scrutinize the background of Officer Curry, evident by his history of "unnecessary use of force" based on a prior grievance. *Id.* White alleges Chief Carpenter and Lt. Curry did not properly train, supervise, and/or discipline Officer Curry regarding proper police practices, including adequate use of force policies, and weapons training. *Id.*

White contends Officer Curry was a part-time officer that was not subjected to the same training as full-time officers but was equipped with the same "use of force tools." *Id.* White further avers no use of force policy was in place for the City, and that Officer Curry received preferential treatment because his father, Lt. Curry, was a lieutenant in the WPD. *Id.*

White alleges Officer Curry's extreme misconduct was a product of de facto policies, practices, or customs – written and unwritten. *Id.* White asserts Chief

Carpenter and Lt. Curry are guilty of: (1) failing to properly hire, supervise, and train WPD officers; (2) failing to reprimand and discipline WPD officers who engage in misconduct; (3) failing to retrain and/or otherwise control WPD officers who engage in excessive force and/or unjustified use of force; (4) failing to follow appropriate policies and procedures to address and correct repeated use of excessive force; (5) failing and inadequately investigating complaints and allegations of excessive force and misconduct; (6) failing to retrain and otherwise control WPD officers who engage in excessive force and unjustified use of deadly force; (7) tacitly approving of WPD officers using their power and position to interfere with citizens' rights; (8) "as a matter of policy and practice . . . facilitating this type of misconduct . . ."; (9) and allowing the practice and custom of a "police code of silence." *Id.* at 8-9.

White alleges Defendants' actions, including Officer Curry's shooting the pepper spray gun directly at her face close range, deprived her of her constitutional rights against unreasonable searches and seizures and the use of unreasonable and excessive force. *Id.* at 10. White further alleges Defendants' actions and/or inactions violated her constitutional rights because of Chief Carpenter's and Lt. Curry's failure to train, supervise, and discipline Officer Curry and because of their creation or failure to correct unconstitutional policies, practices, and/or customs. *Id.* at 11.

According to White, Officer Curry called his father, Lt. Curry, to the scene after shooting White with pepper spray, instead of calling an ambulance. *Id.* at 4. She asserts Lt. Curry arrived on scene, but did not call an ambulance to the scene, instead showing deliberate indifference by putting her in the back seat of a WPD vehicle and

driving her to the hospital instead. *Id.* White alleges Lt. Curry and Officer Curry failed to provide prompt medical care or failed to summon prompt medical care despite her obvious and serious injuries. *Id.*

At this state of the proceedings, White has pleaded sufficient facts to state § 1983 claims against Chief Carpenter and Lt. Curry in their individual capacities.[10] Thus, Defendants' Motion to Dismiss (ECF No. 18) should be DENIED to the extent they seek dismissal of White's § 1983 claims against Lt. Curry and Chief Carpenter in their individual capacities. Defendants may still reassert the qualified immunity defense in a properly supported motion for summary judgment.

---

[10] Because the parties agree the pleadings are sufficient to survive a qualified immunity defense at this stage, the parties seek limited discovery on the issue qualified immunity of Defendants. ECF Nos. 18-2 at 3-4, 21 at 3, 10. When reviewing a well-pleaded complaint and a defendant's motion to dismiss on the basis of qualified immunity, a district court may defer its qualified immunity ruling and order limited discovery when "the court remains 'unable to rule on the immunity defense without further clarification of the facts.'" *Hinojosa v. Livingston*, 807 F.3d 657, 670 (5th Cir. 2015) (citations omitted). In other words, a district court may elect the defer-and-discover approach "when the defendant's immunity claim turns at least partially on a factual question" that must be answered before a ruling can issue. *Lion Boulos*, 834 F.2d at 507. It is well-settled that in cases wherein the district court defers the qualified immunity decision, the breadth of the ordered discovery is critically important. Qualified immunity is immunity not only from judgment, but also from suit; "[o]ne of the most salient benefits of qualified immunity is protection from pretrial discovery." *Hinojosa*, 807 F.3d at 672 (citation omitted).

Here, given the pendency of the motion, discovery has progressed without dispute, including the scheduling of depositions. Moreover, due to the pendency of claims not subject to qualified immunity, White's claims require complete discovery not limited to the issue of qualified immunity. Therefore, the Court should deny Defendants' request to stay the proceedings and limit discovery. However, Defendants retain the right to assert a qualified immunity defense in a properly supported motion for summary judgment.

F.    <u>State law claims</u>

Defendants seek dismissal for failure to state a claim for relief of White's state law claims against them for aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.  ECF No. 18-2 at 4.  Defendants also seek dismissal of White's state law claims against Chief Carpenter and Lt. Curry for negligent hiring, retention, and supervision under La. R.S. art. 2317.  *Id.*

White argues that Louisiana criminal statutes may provide the standard of care in a tort action when other fundamental elements of a tort are present.  ECF No. 21 at 5. White contends that one or more of the Defendants may be liable if she establishes one or more owed her a duty – established by a criminal statute, breached that duty, and she suffered harm from that breach.  *Id.* at 6.  Citing to Fed. R. Civ. P. 8(a), White asserts she need not set out in detail all facts upon which she bases her claims. ECF No. 21 at 6.  White argues she asserts cognizable claims under state law. *Id.*  And if found to lack sufficient facts, White argues the proper remedy would be to allow her to amend.  *Id.*

> 1.    <u>White's state law claims against Defendants of aggravated battery, aggravated assault, and negligent injuring should be dismissed for failure to state a claim for relief.</u>

Defendants assert there is no cognizable civil cause of action of aggravated battery, aggravated assault, or negligent injuring. ECF No. 18-2 at 4.  Defendants argue Louisiana recognizes intentional torts of battery and assault, but not negligent injuring.  *Id.*  Defendants seeks dismissal with prejudice of White's state law claims

of aggravated assault, aggravated battery, and negligent injuring for failure to state a claim for relief. *Id.*

Defendants further argue that White's Complaint is devoid of factual allegations that Chief Carpenter and Lt. Curry assaulted and/or battered White. *Id.* at 5. Defendants argue that White does not allege any fear of receiving a battery, "only that she was hit with pepper spray, arguably, a battery." *Id.* Defendants assert any assault causes of action should be dismissed with prejudice. *Id.*

As to aggravated battery, White cites to La. R.S. 14:34[11] and to her allegations that Officer Curry intentionally pointed a dangerous weapon at her face and fired, causing severe damage and permanent blindness to her right eye. ECF No. 21 at 6. As to aggravated assault, White responds by citing to La. R.S. 14:37[12] – a criminal statute – and her allegations that Officer Curry intentionally pointed his pepper spray gun at her, causing her reasonable apprehension of being harmed. ECF No. 21 at 7. As to dismissal of the negligent injuring claim, White responds that she alleges Officer Curry breached his duty to protect and serve by discharging his pepper spray gun. ECF No. 21 at 7. White does not mention Chief Carpenter or Lt. Curry. *Id.*

Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officer acting in the course of employment, require a showing that

---

[11] "Aggravated battery is a battery committed with a dangerous weapon." La. R.S. 14:34. "Battery is the intentional use of force or violence upon the person of another, or the intentional administration of a poison or other noxious liquid or substance to another." La. R.S. 14:33.

[12] "Assault is an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery." La. R.S. 14:36. "Aggravated assault is an assault committed with a dangerous weapon." La. R.S. 14:37.

the law enforcement officer acted with unreasonable or excessive force. *Harris v. City of Bastrop*, 2016 WL 3948107, at *9 (W.D. La. Jul. 19, 2016); *see also Gerard v. Parish of Jefferson,* 424 So.2d 440, 444 (La.Ct.App.1982) (*citing Kyle v. City of New Orleans,* 353 So.2d 969, 972 (La. 1977)); *see also Taylor v. United States,* 1991 WL 280066 (E.D.La. Dec. 19, 1991) ("Under Louisiana law, in the absence of the use of excessive force, a law enforcement officer cannot be held liable for assault and battery if the assault and battery occurred during a lawful arrest."). "Whether the force used is reasonable depends upon the totality of the facts and circumstances in each case." *Harris*, 2016 3948107, at *9 (citing *Elphange v. Gautreaux*, 969 F.Supp.2d 493, 515 (M.D. La. Sept. 3, 2013)).

Factors to consider include: "(1) the known character of the arrestee, (2) the risks and dangers faced by the officers, (3) the nature of the offense involved, (4) the chance of the arrestee's escape if the particular means are not employed, (5) the existence of alternative methods of arrest, (6) the physical size, strength, and weaponry of the officers compared to the arrestee, and (7) the exigencies of the moment." *Kyle,* 353 So.2d at 972. Moreover, "Louisiana's excessive force tort mirrors its federal constitutional counterpart," and the *Kyle* factors for excessive force are "sufficiently similar" to the *Graham* factors for excessive force. *See Deville v. Marcantel,* 567 F.3d 156, 172–73 (5th Cir. 2009).

Here, White has not alleged facts sufficient to state claims of assault or battery against Defendants. White's allegations consist of the alleged battery or assault by Officer Curry by using pepper spray. But allegations as to Officer Curry are not

currently before the Court.  Thus, White's state law claims of aggravated assault, aggravated battery, and negligent injuring against Defendants should be dismissed without prejudice.

> **2.** **White's state law tort claims of intentional infliction of emotional distress and negligent infliction of emotional distress should be dismissed for failure to state a claim for relief.**

Defendants further seek dismissal with prejudice of White's state law claims of intentional infliction of emotional distress and negligent infliction of emotional distress. *Id.* Defendants contend that to state a viable claim for intentional infliction of emotional distress White must assert factual allegations that she suffered severe emotional distress and that the tortfeasor's conduct was extreme and outrageous. *Id.* at 6. Defendants argue White fails to allege Chief Carpenter or Lt. Curry acted with extreme and outrageous conduct or that they intended to cause her severe emotional distress. *Id.* Defendants also argues a claim for negligent infliction of emotional distress is recognized in very limited circumstances. *Id.* at 7. They contend White asserts she suffered mental pain, anguish, and emotional distress resulting from Defendants' alleged conduct. *Id.* But they assert White fails to allege facts asserting emotional or mental injury separate and apart from pain and suffering. *Id.*

White argues she suffered both intentional and negligent infliction of emotional distress. White responds that pointing a pepper spray gun at another person's face would cause severe emotional distress and would be considered outrageous. ECF No. 21 at 7. White argues she suffered from extreme PTSD from this incident and is unable to play with her nieces and nephews, causing her

additional emotional distress. *Id.* at 7-8. White avers that, but for Officer Curry pointing the gun at her face, she more likely than not would not have experienced the fright that put her in great fear for her personal safety. *Id.*

To establish an intentional infliction of emotional distress claim under Louisiana law, White must show "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto*, 585 So.2d 1205, 1209 (La. 1991). The defendant's conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Glenn v. Boy Scouts of America*, 977 F.Supp. 786, 789 (W.D. La. 1997) (citations omitted). Moreover, the distress suffered must be so severe "'that no reasonable person could be expected to endure it.'" *Robinson v. St. Tammany Parish Public Sch. Sys.*, 983 F.2d 835, 850 (E.D. La. 2013) (quoting *White*, 585 So.2d at 1210). The defendant must have also intended to cause the severe emotional distress. *Griffith v. La.*, 808 F.2d 926, 935 (E.D. la. 2011) (citation omitted).

"Louisiana law does not generally recognize an independent cause of action for negligent infliction of emotional distress . . . . The cause of action is available under limited circumstances only." *DirectTV, Inc. v. Atwood*, 2003 WL 22765354, at *3 (E.D. La. Nov. 19, 2003) (internal quotation marks omitted). To recover for negligent infliction of emotional distress, there must be proof that the defendant violated some

legal duty owed to the plaintiff. *See Haith v. City of Shreveport*, 2005 WL 2140583, at *6 (W.D. La. Sept. 1, 2005). The plaintiff must also meet the heavy burden of proving outrageous conduct by the defendant. *See id.* at *6.

Here, White alleges Officer Curry's conduct was "extreme." ECF No. 1 at 6-7. However, White's Complaint (ECF No. 2) contains no allegations that Chief Carpenter's or Lt. Curry's alleged conduct was intended to cause severe emotional distress. Nor does she assert emotional distress other than under general damages. There are no factual allegations that Defendants caused emotional distress other than a conclusory allegation. She offers no opposition as it relates to Defendants – only as to Officer Curry who is not the subject of this motion. Thus, White's state law claims against Defendants for intentional infliction of emotional distress and negligent infliction of emotional distress should be dismissed without prejudice.

### 3. White's abuse of process claim should be dismissed without prejudice.

Defendants seek dismissal with prejudice of White's state law claim for abuse of process. ECF No. 18-2 at 7. Defendants argue White admits she was not arrested on any criminal charges demonstrating no legal process was instituted by any Defendant. *Id.* In response, White concedes to dismissal of her state law claim for abuse of process. ECF No. 21 at 3. Thus, White's state law claim for abuse of process should be dismissed without prejudice.

4. **White states a plausible state law claim under *respondeat superior* against the City only.**

Although White agrees *respondeat superior* does not apply to her § 1983 claims, White responds that Chief Carpenter is liability under *respondeat superior* for her state law tort claims for the actions of his Lt. Curry and Officer Curry during the course and scope of their employment with WPD.  ECF No. 21 at 4-5.

Defendants argue White did not separately allege causes of action under state law for negligence, vicarious liability, or *respondeat superior* liability under La. Civ. Code art. 2320. ECF No. 22 at 2. Defendants assert they are on notice of a potential cause of action for negligent hiring or training against the City but that there is no separate cause of action that could be pleaded under *respondeat superior* against Chief Carpenter and Lt. Curry.  *Id.* at 3.

Under the theory of *respondeat superior* "employers are answerable for the damage occasioned by their [employees], in the exercise of the functions in which they are employed." La. Civ. Code art. 2320.  Here, the *respondeat superior* claims may be dismissed outright, because under Louisiana law a police chief is not vicariously liable for acts of his or her subordinates. *See Taylor v. City of Alexandria,* 261 So.2d 92, 93 (La.App. 3rd Cir. 1972).[13]

However, White's allegations that Defendants were acting in the course and scope of their employment triggers vicarious liability on behalf of the City for her state law claims.  *See Jenkins v. Lee*, 1999 WL 97931, at *5 (E.D. La. Feb. 17, 1999) (citations omitted).  And unlike the federal constitutional claim, "[m]unicipalities do

---

[13] This is distinguishable from that of a sheriff who usually has the

not enjoy special protection from vicarious liability under Louisiana law and are subject to respondeat superior like every other employer." *Deville v. Marcantel,* 567 F.3d 156, 174 (5th Cir. 2009).

Here, White does not allege Chief Carpenter or Lt. Curry are the employer of Officer Curry.   Rather, White alleges the City is the employer of individual Defendants Chief Carpenter, Lt. Curry, and Officer Curry. ECF No. 2 at 1.   Thus, White fails to state plausible state law claims for relief against Chief Carpenter and Lt. Curry under *respondeat superior*. However, the Court finds White's allegations are sufficiently pleaded to assert a state claw claim of *respondeat superior* liability against the City.[14]

### 5.   White asserts plausible state law claims against the City and Chief Carpenter for negligent hiring, retention, or supervision.

Defendants seek dismissal of White's state law claims for negligent hiring, retention, or supervision against Chief Carpenter and Lt. Curry.  ECF No. 18-2 at 7-8.  Defendants assert that under Louisiana law, only "[g]overnmental employers" may be liable for negligent hiring, retention, or supervision.   *Id.* at 7.  Defendants argue White's allegations admit Chief Carpenter and Lt. Curry are not employers.  ECF No. 18-2 at 7-8.

White responds that Chief Carpenter and Lt. Curry had the authority and job duties to hire, supervise, and make retention decisions about WPD members.  ECF

---

[14] A plaintiff can simultaneously maintain separate causes of action as to both a tort cause of action against an employer to hold the employer vicariously liable, and an independent negligent hiring, training, and/or supervision cause of action against the employer. *See Dennis v. Collins*, 2016 WL 6637973, at *4 (W.D. La. Nov. 9, 2016).

No. 21 at 9 (citing ECF Nos. 1, 2). White asserts her state law claims of negligent hiring, retention, or supervision remain viable against the City for not properly overseeing Chief Carpenter's and Lt. Curry's hiring, retention, and supervision. ECF No. 21 at 9.

White's Complaint (ECF No. 1), as amended (ECF No. 2), alleges the City employs Chief Carpenter and Lt. Curry. ECF Nos. 1, at 1, 2 at 1. White alleges Chief Carpenter is responsible for the screening, hiring, disciplining, training, supervising, and retraining of WPD officers. ECF Nos. 1 at 6, 2 at 6-7. White alleges Chief Carpenter, Lt. Curry, and the City failed to properly examine and scrutinize Officer Curry's background which contained a history of "unnecessary use of force." ECF Nos. 1 at 6-7, 2 at 7. White further asserts that Chief Carpenter, Lt. Curry, and the City did not properly train, supervise, and/or discipline Officer Curry regarding proper police practices, including adequate use of force policies and weapons training. ECF Nos. 1 at 7, 2 at 7. White asserts state law claims under Louisiana Civil Code articles 2315 and 2317 against Lt. Curry for negligent hiring, retention, and supervision, and against Chief Carpenter and the City for negligent retention and supervision. ECF Nos. 1 at 13-14, 2 at 13-15.

Negligent hiring, retention, and supervision are theories of direct liability governed by the duty-risk analysis that applies to all negligence cases arising under Louisiana law. *Cruz v. Fulton*, 2016 WL 4543613, at *10 (E.D. La. Aug. 31, 2016) (citing *Griffin v. Kmart Corp.*, 776 So. 2d 1226, 1231 (La. App. 2000)). The duty-risk analysis requires the plaintiff to prove: "duty, breach of duty, cause-in-fact, scope of

26

the liability or protection, and damages." *Id.* An employer has a duty to exercise reasonable care in selecting, retaining, and supervising an "employee who in the performance of his duties will have a unique opportunity to commit a tort against a third party." *Cote v. City of Shreveport*, 73 So. 3d 435, 440 (La. App. 2 Cir. 9/21/11) (citing *Griffin*, 776 So. 2d at 1231). Moreover, a police chief's training and supervisory decisions are grounded in policy considerations. *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005).

As discussed herein, White alleges the City is the employer of Defendants and that Chief Carpenter is responsible for the screening, hiring, disciplining, training, supervising, and retraining of WPD officers. White's Complaint (ECF No. 2) contains factual allegations sufficient to assert plausible state law claims against the City and Chief Carpenter for negligent hiring, training, and/or supervision. However, the Court finds White fails to state a plausible claim for relief as to Lt. Curry.

## III.    Conclusion

Because White's official capacity claim against Chief Carpenter is duplicative of her federal constitutional claims against the City; because White concedes to dismissal of her abuse of process state tort claim; because there is no *respondeat superior* liability under § 1983 against a municipality; because the Defendants do not seek dismissal of White's *Monell* claims against the City; because White's Complaint (ECF No. 2) alleges sufficient factual allegations to overcome qualified immunity at this stage of the proceedings as to the defense of qualified immunity as to White's § 1983 claims against Chief Carpenter and Lt. Curry in their individual capacities;

because White fails to state plausible state law tort claims against Defendants for aggravated battery, aggravated assault, intentional infliction of emotional distress, negligent infliction of emotional distress; because White fails to state plausible state law claims against Chief Carpenter and Lt. Curry under *respondeat superior*; and because White fails to assert a plausible state law claim against Lt. Curry for negligent hiring, training, and/or supervision;

IT IS RECOMMENDED that Defendants' Rule 12(b)(6) Motion to Dismiss (ECF No. 18) be GRANTED IN PART AND DENIED IN PART.[15]    Specifically, Defendants' Motion should be GRANTED IN PART as to the following claims:  (1) § 1983 claims against Chief Carpenter in his official capacity; (2) § 1983 claims against the City under *respondeat superior*; (3) state law tort claims against Defendants of aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process; and (4) state law claims against Lt. Curry of negligent hiring, training, and/or supervision. Defendants' Motion should be DENIED IN PART to the extent Defendants seek dismissal of White's suit as untimely, and as to dismissal of the *Monell* claim against the City, and the § 1983 claims against Chief Carpenter and Lt.

---

[15] Defendants did not address White's *Monell* claim against the City.  Therefore, the undersigned does not consider that claim and White's *Monell* claim against the City remains. To the extent White asserts *respondeat superior* liability under state law against the City, that claim also remains.

Curry in their individual capacities.[16]  To the extent Defendants seek dismissal of any other claims, Defendants' Motion should be DENIED.

IT IS FURTHER RECOMMENDED that the following claims be DISMISSED WITH PREJUDICE:  (1) § 1983 claim against Chief Carpenter in his official capacity; and (2) § 1983 claim against the City under *respondeat superior*.

IT IS FURTHER RECOMMENDED that the following claims be DISMISSED WITHOUT PREJUDICE:  (1) White's state law tort claims against Defendants for aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.

IT IF FURTHER RECOMMENDED that White's state law claims against Lt. Curry of negligent hiring, negligent training, and/or negligent supervision be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that to the extent Defendants seek a stay of the proceedings and limited discovery, Defendants' request should be DENIED.

IT IS FURTHER RECOMMENDED that White be ordered under LR 41.3 to show good cause why service of summons and complaint has not been made as to Officer Curry.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen

---

[16] Also, White's § 1983 claims and state law tort claims against Officer Curry remain pending as they are not currently before the Court.

(14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Friday, March 5, 2021.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE