UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| TANISHA WHITE | CASE NO. 19-cv-1410 |
| -vs- | JUDGE DRELL |
| CITY OF WINNFIELD, ET AL. | MAGISTRATE JUDGE PEREZ-MONTES |

## R U L I N G

Before the court is a motion for summary judgment filed by the City of Winnfield (the "City"), Chief Johnny Ray Carpenter ("Chief Carpenter"), and Lieutenant Charles "Chuck" Curry ("Lt. Curry") (collectively, the "Defendants"). (Doc. 71). Defendants seek dismissal of the Monell[1] claim against the City, the §1983 claims against Chief Carpenter and Lt. Curry in their individual capacities, and state law claims against Chief Carpenter.[2]

I.    Background

On the evening of November 5, 2018, Tanisha White arrived at the home of Kenneth Nash located at 508 North Pineville Street, Winnfield, Louisiana. Nash and White spoke outside of the residence regarding White's desire to rent a room. Nash explained to White that he was unable to rent a room to her because she did not have enough money. White began to complain to Nash about her personal life. Not wanting to engage in the discussion, Nash told White she should leave, and he returned inside the house.

Later that evening, Nash's mother, Catherine Mosley, heard a woman talking loudly outside. Mosely walked outside and encountered White. She told White to leave but White

---

[1] Monell v. Dept. of Social Services, 436 U.S. 658, 691 (1978).
[2] Although Defendants state they seek dismissal of state law claim, they do not assert an argument in favor of dismissal.

refused.  Mosley warned White she was about to call the police and suggested White leave.  Mosley returned inside, called the Winnfield Police Department, and complained of an unwanted person at her home.

Officer Justin Curry responded to the call.  Upon arrival, he noticed a woman and man standing in the front yard.  The woman, who he knew to be White, was yelling at a man, who he learned was Nash.  Officer Curry approached the two and asked White to stand to the side while he spoke to Nash.  Officer Curry asked Nash if he should drive White home.  As Nash recounted the events of the evening, specifically the physical altercation between the two, Officer Curry asked Nash if he wanted to press charges.  Nash advised that he did, so Office Curry announced to White that she was under arrest.

Officer Curry grabbed White's wrist to place her in handcuffs, but she pulled away.  White then advanced on Officer Curry so he pushed her back.  She fell to the ground, stood back up, and advanced upon him again.  He deployed a high-powered pepper spray from a non-lethal weapon, a JPX CLE, in an effort to subdue White.  White fell to the ground.  Once White was on the ground and subdued, Officer Curry called for assistance.

Lt. Chuck Curry arrived on the scene and noticed White was covered in a red substance. He asked Officer Curry if he deployed a chemical agent.  Officer Curry confirmed the same.  Lt Curry took a closer look and determined both pepper spray and blood were covering White's face and shirt and that she sustained an injury to her face.  Accordingly, Lt. Curry called an ambulance to the scene.

The ambulance arrived at the scene and administered care.  Paramedics then drove White to the Winnfield Parish Medical Center where she received additional care.  However, the treating physician ultimately determined that the nature of the injuries to her face warranted a transfer to

Louisiana State University Health Shreveport.  The medical records reflect White sustained an orbital fracture to her left eye with loss of vision.

As a result of these events, White filed the instant lawsuit naming Officer Justin Curry ("Officer Curry"), Lt Curry, Chief of Police Carpenter, the City of Winnfield, and XYZ Insurance Company as defendants.  White alleged Officer Curry, Chief Carpenter, and Lt. Curry (collectively the "Defendants") violated her Fourth Amendment right to be free from unreasonable search and seizure and use of unreasonable and excessive force. (Doc.1).  She claimed Lt. Curry and Chief Carpenter violated her Fourth and Fourteenth Amendment rights by failing to train, supervise, and discipline Officer Curry and by creating or failing to correct unconstitutional policies, practices, patterns, or customs.  White also claimed the City was liable for Fourth and Fourteenth Amendment violations as the City was deliberately indifferent to (a) alleged policies, patterns, practices, and (b) customs of the Winnfield Police Department as well as to the need for more or different training, supervision, investigation, or discipline.  (Doc. 1).

Additionally, White asserted state law tort claims against the defendants under Louisiana Civil Code articles 2315 and 2317.  White claimed that defendants committed the following torts: aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, negligent infliction of emotional distress, and abuse of process.  She also claimed Lt. Curry, Chief Carpenter, and the City negligently hired, retained, supervised, and/or disciplined officers, including part time employees.

The City, Chief Carpenter, and Lt. Curry filed a motion to dismiss (Doc. 18) which White opposed (Doc. 21).  The Magistrate Judge issued a report and recommendation (Doc. 33) that the motion be granted in part and denied in part.  The undersigned adopted the report and recommendation and dismissed White's federal claims against Chief Carpenter in his official

3

capacity and against the City pursuant to *respondeat superior*.  We also dismissed her state law claims against defendants for state law torts of aggravated battery, aggravated assault, negligent injuring, intentional infliction of emotional distress, and abuse of process and against Lt. Curry for negligent hiring, training, and/or supervision.  In accordance with the report and recommendation, the court did not dismiss the lawsuit as untimely, nor did it dismiss any other claims.  (Doc. 49).

Noted within that same report and recommendation was the fact that the claims against Officer Justin Curry were not then before the court as he had never been served.  (Doc. 33). Accordingly, it was recommended that White be ordered under Local Rule 41.3 to show good cause why service of summons and complaint had not been made on him.  The court issued an order calling for White to show cause (Doc. 49), but she never responded.

On August 10, 2021, Officer Justin Curry, filed a motion to dismiss based upon White's failure to serve him and failure to prosecute her claims against him despite the fact the claim had been pending for nearly two years.  (Doc. 53).  The motion was not opposed by White.  In the undersigned's ruling, the court explained that not only was the motion unopposed, but White also failed to respond to the court's show cause order demanding White explain why service of the summons and complaint had not been made upon Officer Justin Curry.  (Doc. 61).  Based upon the foregoing, the court dismissed the claims against Officer Justin Curry.  (Doc. 62).

Without that, White's remaining federal claims include those against the City, Chief Carpenter, and Lt. Curry for failure to train, supervise, and discipline officers and her claim against Lt. Curry for deliberate indifference to medical needs.  White's remaining state law claims are those against the City for *respondeat* superior and those against Chief Carpenter and Lt Curry for negligent hiring and retention.

II.      Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the applicable governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Sossamon v. Lone Star State of Tex., 560 F.3d 316, 326 (5th Cir. 2009); Hamilton v. Segue Software, Inc., 232 F.3d 473, 477 (5th Cir. 2000).  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.  Liberty Lobby, 477 U.S. at 252; Hamilton, 232 F.3d at 477.

The party seeking summary judgment has the initial responsibility to inform the court of the basis for its motion and identify those parts of the record that demonstrate the absence of genuine issues of material fact.  Washburn v. Harvey, 504 F.3d 505, 508 (5th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact.  Id.  All facts and inferences are construed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.  Norwegian Bulk Transport A/S v. Int'l Marine Terminals P 'ship, 520 F.3d 409, 412 (5th Cir. 2008) (citing Celotex, 477 U.S. at 325).  The motion should be granted if the nonmoving party cannot produce evidence to support and essential element of its claim.  Seacor Holdings, Inc. v. Commonwealth Ins. Co. 635 F.3d 680 (5th Cir. 2011) (internal citations omitted).  A party whose claims are challenged by a motion for

summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof. Celotex, 477 U.S. at 325. "Conclusory allegations unsupported by concrete and particularized facts will not prevent an award of summary judgment." Liberty Lobby, 477 U.S. at 247.

III.    Law and Analysis

A.  XYZ Insurance Company

The court possesses the inherent authority to dismiss a party *sua sponte*. McCullough v. Lynaugh, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing Link v. Wabasah R.R. Co., 370 U.S. 626, 630-31 (1962)). Local Rule 41.3 provides for dismissal, without prejudice, of a civil action or party for lack of prosecution where a cause of action has been pending for six months without proceedings being pursued within such period. Here, the case has been pending nearly three years. Fictitious insurer XYZ Insurance Company was already dismissed once, in April 2021, pursuant to this local rule. (Doc. 8). White filed a motion to reinstate XYZ Insurance Company assuring the court she would substitute the proper party following the submission of Rule 26 disclosures. (Doc. 11). On May 13, 2021, the Magistrate Judge granted the motion (Doc. 12); yet Smith never named nor served any actual insurance company. Neither did she file a motion to amend or substitute. As White was provided ample notice, time, and opportunity to make a substitution, we *sua sponte* dismiss all claims against XYZ Insurance Company.

A.  Monell Claim Against the City

Under Monell, municipalities can be held liable for the constitutional violations which arise form enforcement of the municipality's policies or procedures. Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Municipalities cannot, however, be liable under Section 1983 for the constitutional torts of their employees under the doctrine of *respondeat superior*. Id. at 691. Thus,

a <u>Monell</u> claim is a claim against a municipality for a constitutional deprivation which is tied directly to a policy or custom of the municipality.

        i)        Excessive Force

Defendants argue the claims against them should be dismissed because Officer Curry's actions did not amount to a use of excessive force, and were without a constitutional violation, White cannot establish a Section 1983 claim.  Defendants challenge White to show that her injury occurred directly and solely from the use of excessive force as she has no medical experts to establish causation.  Defendants further argue that White cannot controvert Officer Curry's measured and ascending response to her physical resistance.

The evidence before the court is that White fell to the ground, presumably on concrete, upon being sprayed with JPX spray.  Medical records suggest the impact of the fall caused a severe orbital fracture which possibly caused the loss of vision in her eye.  White presented no argument much less any evidence, medial or otherwise, to establish that the orbital fracture and/or her loss of vision was caused by the JPX spray.  Even if we are to assume that White's injuries were directly and solely caused from JPX spray, she does not establish that Officer Curry's actions were not a measured and ascending response to her actions of physically resisting arrest.

Officer Curry advised White she was under arrest.  Instead of submitting to the arrest, White pulled away from Officer Curry's grasp and her verbal aggression turned physical.  Officer Curry responded by pushing her back from him to create distance.  White responded by getting up and charging toward him.  Officer Curry deployed the JPX spray.  Although there is a dispute as to how far away Office Curry was when he deployed the JPX spray, the parties agree it was within the now recommended distance of seven feet.[3]  However, given the facts before us, it is apparent

---

[3] JPX "Safety Guidelines" recommend a "7-foot minimum deployment distance from barrel to subject."  (Doc 71-6, p.28).  City of Winnfield training also recommends a minimum operating distance of 7 feet.  (Doc. 71-6).

that White, who was actively resisting arrest, was rushing toward Officer Curry and closing the gap between the two. Therefore, we cannot say that Officer Curry's response was unreasonable under the circumstances. His actions were measured and ascending to the use of resistance exhibited by White. Accordingly, we find that Officer Curry did not violate White's constitutional rights and we will grant Defendants' motion for summary judgment.

   ii)  City Liability

In the unlikely event our ruling regarding the use of force is deemed improper, out of an abundance of caution, we also evaluate White's Monell claim against the City:

To prove a claim for municipal liability under Section 1983, a plaintiff must identify: (1) an official policy or custom, (2) promulgated by the municipal policymaker, (3) that was the "moving force" behind the violation of a constitutional right. Piotrowski v. City of Houston, 237 F.3d 567, 578 (5th Cir. 2001); Monell, 436 U.S. at 694. See also Rayborn. v. Bossier Par. Sch. Bd., 881 F.3d 409, 416-17 (5th Cir. 2018) (citing Rivera v. Houston Indep.Sch.Dist., 349 F.3d 244, 277 (5th Cir. 2003)). The existence of an official policy can be shown through evidence of "[a] policy statement, ordinance, regulation, or decision that [was] officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers … delegated policy-making authority." Williams v. Kaufman Cnty., 352 F.3d 994, 1013 (5th Cir. 2003) (quoting Webster v. City of Houston, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

In the absence of an actual policy, a plaintiff can point to "a persistent widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents a municipal policy." Zarnow v. City of Witchita Falls, Tex., 614 F.3d 161, 169 (5th Cir. 2010) (citation omitted); Webster, 352 F.3d at 841. To establish the existence of a custom or unofficial

policy, a plaintiff must adduce evidence that the unconstitutional conduct occurred in cases other than his own, or in the rare case, that final policymaker took a single unconstitutional action. Id. This single incident exception is extremely narrow and gives rise to municipal liability only if the municipal actor is a final policymaker. Bolton v. City of Dallas, 541 F.3d 545, 548 (5th Cir. 2008) (citing Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir. 2005)).

In City of Canton v. Harris, 489 U.S. 378, 388 (1989), the Supreme Court expanded Monell to include claims for inadequate police training. To recover under a failure to train theory, the plaintiff must demonstrate that (1) the failure to train amounted to deliberate indifference to the right of persons with whom the policy came in contact and (2) the municipality's policy actually caused a constitutional injury. Id. at 389-90. To constitute deliberate indifference, the failure to train must reflect a deliberate or conscious choice made by municipal policymakers. Id.

Here, White makes several arguments pertaining to the City's liability. First, she claims the City had a written policy which condoned the use of excessive force. Second, she contends that there was a known practice of Winnfield police using excessive force. Finally, she argues that the City failed to train its employees.

White claims that there is a written policy which condones the use of excessive force. In support she cites the policy which states, "[e]very member of the Winnfield Police Department shall refrain from using unnecessary force or violence and will not strike a prisoner or any other person except in self-defense." (Doc. 80-5). White contends that the exception for use of force in self-defense opens the door to the department's condoning a use of force, particularly in instances such as this one where the officer argues that he was attacked by the suspect. We do not find White's bald assertion sufficient to overcome summary judgment. There is no support in the record for her contention that this policy was read to allow for the use of excessive force. Nor do

we find that the circumstances of this lawsuit have led the defendants to rely upon self-defense as a defense to the claims at hand.

In support of her claim that there was a widespread use of excessive force, White cites to a federal lawsuit pertaining to a single particular Winnfield police officer's use of a taser which resulted in a suspect's death.  This, without more, cannot show a custom.  That case involved the use of a taser, not the use of JPX spray.  As these incident have not been shown to be either widespread or related, this claim fails.

Finally, White argues that the City failed to train its employees. Specifically, White argues that Chief Carpenter, as the official policymaker for the Winnfield Police Department, intentionally hired part-time employees to work full-time as police officers so that he did not have to ensure they were Peace Officer Standards Training ("POST")- certified.  According to Louisiana law:

> [A]ny person who begins employment as a peace officer in Louisiana subsequent to January 1, 1986 [or as a part-time or reserve peace officer in Louisiana on or after January 1, 2022] must successfully complete a certified training program … and successfully pas a … comprehensive examination within one calendar year from the date of initial employment.  Any person who fails to comply with this requirement shall be prohibited from exercising the authority of a peace officer; however, such person shall not be prohibited from performing administrative duties.

La. R.S. 40:2405. White argues that because the City hired Officer Curry as a part-time employee and placed him in a full-time role though he was not POST-certified, the City was deliberately indifferent to ensuring their officers were properly trained.

To succeed on her claim of failure to train or supervise under Section 1983, White must demonstrate: (1) the City failed to train or supervise the employee involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of White's

rights; and (3) the failure to train or supervise constituted deliberate indifference to her constitutional rights. <u>Cousin v. Small</u>, 325 F.3d 627, 637 (5th Cir. 2003). As a rule, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." <u>Thompson v. Upshur Cnty., Tex.</u>, 245 F.3d 447, 459 (5th Cir. 2001) (internal quotations and citations omitted). The plaintiff must ordinarily show at least a pattern of similar violations. <u>Id.</u> Moreover, the inadequacy of training must be obvious and obviously likely to result in a constitutional violation. <u>Id.</u>

There is no dispute here that Officer Curry was trained in use of a JPX CLE pepper spray gun and that he passed the training course. (Doc. 71-6). The fact that Officer Curry was not POST-certified, although troublesome, does not establish that had Officer Curry been POST-certified, he would have reacted any differently. The focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.    <u>City of Canton</u>, 489 U.S. at 379. White has not asserted any argument or provided any evidence that the training Officer Curry did receive was inadequate. Nor has she established how the POST-certification would have resulted in a different outcome. Based on the evidence before us, we find that White has not shown a genuine issue as to Officer Curry's training.[4]

Yet, even if White could establish that Officer Curry was not properly trained, she has failed to establish that the City was deliberately indifferent to providing training. A plaintiff must normally show that there is a pattern of similar constitutional violations by untrained employees to establish deliberate indifference. <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011). White has not pointed to a pattern of similar conduct in the Winnfield Police Department. As she points out,

---

[4]  Although Officer Curry received some training, Winnfield's purported practice of hiring part-time employees to escape the obligation of ensuring its officers are POST-certified is a very dangerous game to play.

there is an exception to this general rule: "A single decision by a policy maker may, under certain circumstances, constitute a policy for which the [City] may be liable." Brown v Bryan Cnty., OK, 219 F.3d 450, 462 (5th Cir. 2000).  However, this exception is extremely narrow.  Valle v. City of Houston, 613 F.3d 536, 549 (5th Cir. 2010).  First, a plaintiff must prove that "that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered." Id.  For a violation to be "highly predictable," the City must have failed to train its employees concerning a clear constitutional duty implicated in recurrent situations that a particular employee is certain to face." Littell v. Houston Indep. Sch. Dist., 894 F.3d 616, 624 (5th Cir.2018).  Second, the plaintiff must establish that the municipal actor is the final policymaker as "[a]ctual or constructive knowledge of custom must be attributable to the governing body of the municipality or to an official to whom the body has delegated policy-making authority." Webster, 735 F.2d at 842.  A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business." City of St. Louis v. Praprotnik, 485 U.S. 112, 125 (1988).  Whether an official possesses final policymaking authority for purposes of municipal liability is a question of state and local law.  Id. at 482.

Record evidence shows that Officer Curry received some training.  Thus, without evidence to show the inadequacy of that training or the specific need for POST-certification in this instance, we cannot say it was "highly predictable" that Officer Curry would act in a manner which would violate White's constitutional rights and injure her.  Further, there is no evidence before the court that Chief Carpenter is a final policymaker for the City.  In fact, there is no evidence as to how the City of Winnfield is organized.  Without more, we cannot say that the exception is met and without the exception, there is no Monell claim.

B. Individual Capacity Claims

    i)      Failure to Train

White also argues that Chief Carpenter and Lt. Curry are liable in their individual capacities for failure to train, supervise, and/or discipline Officer Curry.  A plaintiff who seeks to impose supervisory liability on a public official in his individual capacity bears the burden of proving: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." Estate of Davis v. City of N. Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005).  Accordingly, to survive a motion for summary judgment, White must demonstrate a genuine dispute of material fact as to each of these elements once the defendant asserts a qualified immunity defense.

As explained *supra*, White has not produced evidence establishing a causal link between the failure to train and the violation of her rights.  White also does not provide anything more than bald assertions that Chief Carpenter or Lt. Curry failed to supervise Officer Curry or any other officers in their department.  Furthermore, White cannot establish deliberate indifference.  Accordingly, these claims must also be dismissed.

    ii)      Deliberate Indifference to Medical Care

White asserts a cause of action in her complaint for deliberate indifference to medical care against Lt. Curry.  She claims that Lt. Curry arrived on the scene and ignored her injuries and need for medical care.  Instead of calling for an ambulance, she contends he placed her in the back of his vehicle and drove her to the hospital.  These allegations are in no way supported by record evidence.  Testimony from various witnesses as well as medical records from that evening establish that Lt. Curry called for an ambulance almost immediately upon arriving on the scene.

13

Based upon these facts, White cannot carry her burden of proving that Lt. Curry consciously disregarded her serious medical needs.  <u>Lawson v. Dallas Cnty.</u>, 286 F.3d 257, 262 (5th Cir. 2002) (citing <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1970)).

>C.  State Law Claims

There are two remaining state law claims: (1) that the City is liable under the theory of *respondeat superior*, and (2) that the City and Chief Carpenter are liable for the negligent hiring, retention, or supervision of Officer Curry.  Neither of these claims are addressed by the Defendants in the motion for summary judgment.  Under 28 U.S.C. §1367(c)(3), the court may decline to exercise supplemental jurisdiction over state law claims when all other claims over which it has original jurisdiction are dismissed.  The court has wide discretion to do so.  <u>Guzzino v. Felterman</u>, 191 F.3d 588, 594-95 (5th Cir.1999); <u>Hicks v. Austin Indep. Sch. Dist.</u> 564 F.App'x 747, 748 (5th Cir.2014).  As no independent basis exists for jurisdiction, we dismiss these state law claims without prejudice.

>D.  <u>Daubert</u> Motion

Considering the findings that White's claims lack merit, the questions of whether George Armbruster's affidavit should be excluded is moot.

THUS DONE AND SIGNED at Alexandria, Louisiana this ___ day of October 2022.

DEE D. DRELL, SENIOR JUDGE
UNITED STATES DISTRICT COURT